## Case No. 10,956.

### PENNSYLVANIA SALT MANUF'G CO. v. THOMAS.

[5 Fish. Pat. Cas. 148; [1] 8 Phila. 144; 28 Leg. Int. 317; 3 Leg. Gaz. 316; 1 Leg. Gaz. Rep. 275.]

Circuit Court, E. D. Pennsylvania. Oct., 1871.

PATENT — REISSUE IN DIVISIONS — DISCREPANCIES AND VARIATIONS—PATENTABILITY—METHOD OF PUTTING UP CAUSTIC ALKALI.

1. Where an original patent is reissued in divisions, such divisions are to be treated as but one patent with several claims.

[Cited in brief in Fassett v. Ewart Manuf'g Co., 58 Fed. 364.]

2. Discrepancy in the titles and variations in the description and claims of the original and reissued patents will not avoid the latter. That can only result from diversity of subject matter.

3. Where the original specification distinctly indicated caustic alkali, prepared for general domestic use, as the invention of the patentee, but did not technically claim it: *Held*, that this was the proper subject of amendment.

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

4. The patentability of an alleged invention is, in many cases, most satisfactorily shown by its utility.

5. Letters patent for caustic alkali, inclosed in a tight metallic casing or integument, as reissued to George Thompson, April 16, 1867, examined and sustained.

6. Differences in the method of incasing the soda and sealing the packages do not relieve the defendant from the charge of infringement.

Final hearing on pleadings and proofs.

Suit brought [by Pennsylvania Salt Manuf'g Co. against E. A. Thomas] upon letters patent for "improvement in devices for putting up caustic alkalies," granted to George Thompson, October 21, 1856, and reissued to him in three divisions, Nos. 2569, 2570, and 2571, of which Nos. 2569 and 2571 were for "improvements in the manufacture of caustic alkali," and No. 2570 was for an "improved process of putting up caustic alkali." The nature of the invention is more fully stated in the report of Pennsylvania Salt Manuf'g Co. v. Gugenheim [Case No. 10,954].

George Harding, for complainant.
John A. Burton, for defendant.

McKENNAN, Circuit Judge. The complainant is the assignee of George Thompson, to whom reissued letters patent, Nos. 2570 and 2571 were granted, for the unexpired term of fourteen years, from October 21, 1856. The first is for the process of putting up caustic alkali (soda or potassa) in metallic casing or integument, by pouring the molten caustic alkali into the casing, and then closing up the top; and the other is for caustic alkali, inclosed in a tight metallic integument or metallic casing. One is for the process of putting up caustic alkali; the other for the product of such process.

The validity of these reissues is assailed upon the ground that they are not for the same invention described in the original patent. They are divisions of the original patent, and are therefore to be treated as but one patent, with two distinct claims. Although this division of the patent may have been unnecessary to effectuate the invention, it in no wise impairs the validity of the reissues. Nor will discrepancy in the titles, and variations in the description and claims of the original and reissued patent avoid the latter. This effect results only from diversity of subject matter. Battin v. Taggart, 17 How. [58 U. S.] 84.

The material inquiry then is: Is the subject matter of both patents the same invention? In other words, are the process and the product claimed in the reissues substantially described in the original? In the original patent the nature of the invention is stated to consist in "a new and useful mode of wrapping cakes of potash or caustic soda in air-tight wrappings, so as to preserve it from the action of the atmosphere, being designed to enable the manufacturer of these caustic alkalies to put them up in original packages of uniform size and weight, of such convenient size that when a package is opened the whole may be used at once." Two modes of carrying the invention into effect are described. One is to provide canisters of thin sheet-iron, cemented at the joints with inflexible cement, into which the caustic alkali is poured in a molten state, and while hot the lid is closely fastened down, so as to exclude the atmosphere. Now, while this patent describes and claims the process of putting up caustic alkali in air-tight integuments, it describes also the object and result of the process. Packages of caustic alkali are produced of uniform weight, and such convenient size that when a package is opened the whole may be used at once. The very object of the description is to indicate a product possessing original merits as the result of an improved process.

In reissue No. 2570, which is for "an improved process of putting up caustic alkali," the description of the process is, manifestly, in substantial accordance with the description in the original specification.

Reissue No. 2571 is for an "improvement in the manufacture of caustic alkali," and claims "caustic alkali, incased or enveloped in a tight metallic integument or casing, substantially as above described." The mode of incasing it, and its peculiar properties when so incased, are distinctly described and stated, and with no material variation of phraseology from that employed in the original specification.

It is apparent that the subject of both specifications is caustic alkali, so put up and prepared as to secure special commercial properties, protection against deliquescence, capability of safe transportation, and adaptation to general use. The reissued patent, then, is for the same alleged invention described in the original specification, and the apparent object of the amendment was to make an explicit claim for it as a new article of manufacture and commerce, which was distinctly indicated as the patentee's invention, but was not technically claimed in the original specification.

It has been repeatedly adjudged that this may be done. "This," says Mr. Justice McLean, in Battin v. Taggart, 17 How. [58 U. S.] 84, "the patentee had a right to do. He had a right to restrict or enlarge his claim, so as to give it validity and effectuate his invention." And so Mr. Justice Grier held, in passing upon this patent, in this court, in Pennsylvania Salt Manuf'g Co. v. Gugenheim [Case No. 10,954].

The respondent further objects to the patent, that the invention claimed is not novel. I do not propose to notice in detail the evidence adduced on this point. It is sufficient to say of it generally that it does not prove that the product, with the distinguishing properties claimed by the patentee to belong to his, was in use before his invention. The hydrate of soda was a well-known chemical substance, rapidly deliquescent when exposed

to the air, and, by reason of its causticity, difficult to handle and dangerous to transport. An obvious security against these risks was to inclose it in anti-corrosive air-tight vessels, and so it was treated; but in the modes adopted for its preservation it was only employed in the laboratory, in surgical operations, and in the arts, which would admit of the use of large quantities of it at one time.

It was not until George Thompson, after repeated experiments, perfected his method of putting it up, that caustic soda was brought into very general household use in the manufacture of soap. This was undoubtedly due to the plan devised by him for its preparation, whereby portability, safety, and convenience in handling and transportation, and special adaptation to domestic use were for the first time secured. The proofs, therefore, fall short of overcoming the presumption of novelty arising from the patent.

A graver objection is that which brings in question the patentability of the alleged invention. A patentable subject must be not only new and useful, but it must involve some exercise of the inventive faculty, and it must not be merely the application of an old thing to a new use. It is undoubtedly true that small metal cans and infusible cement were in use before Thompson's invention, and that caustic alkalies were preserved from deliquescence by inclosure in air-tight packages of glass, iron, and wood; but still the fact remained that caustic soda was unavailable for general use, and especially for the domestic manufacture of soap. By Thompson's method, it was invested with commercial properties and practical adaptabilities which did not pertain to it before.

Its deliquescent tendency and corrosiveness confined its consumption within narrow limits. By Thompson's efforts these difficulties were practically overcome, and it was fitted for general use and the supply of a universal want. In the language of Mr. Justice Livingston, in Langdon v. De Groot [Case No. 8,059], it was rendered "more portable and convenient for use." The effect was immensely to increase its consumption in the domestic production of soap, which was before manufactured by other methods, or in large establishments only. Indeed, it may be considered as originating a new branch of domestic manufacture. This is certainly indicative of original merit, and is demonstrative of its great public utility.

The patentability of an alleged invention is, in many cases, most satisfactorily shown by its utility. In Webster on Subject Matter, 30, it is said: "The utility, then, of the change, as ascertained by its consequences, is the real practical test of the sufficiency of an invention; and since the one can not exist without the other, the existence of one may be presumed in proof of the existence of the other. Wherever the utility is proved to exist in any great degree, a sufficiency of invention to support the patent must be presumed."

Judged by the standard of utility, then, a sufficiency of invention to support this patent is to be presumed.

In a commercial sense, it has just claims to be regarded as a new product. It was so treated by Commissioner Mason in the original application for a patent. In his opinion, he very forcibly says: "Had he discovered an ingredient which, mixed with alkali, would, without injury to its properties in other respects, have prevented it from a tendency to deliquescence, he would have made a patentable discovery. Is this not equally so? In fact, the packages of alkali, done up as proposed, may, in substance, be deemed a new commodity, a new article of merchandise, for, although its constituent ingredients are the same as were before known and used, a new property has in reality been communicated to it. In point of fact, the article now offered for sale is the alkali without any tendency to deliquescence; this, though chemically not new, is so commercially, and is so proved by the affidavits filed." Equally satisfactory proof of this has been exhibited in this case, and to this is to be added the wide extension of its use as a significant recognition of its novelty as a commercial product.

The whole question was before this court in Pennsylvania Salt Manuf'g Co. v. Gugenheim, supra, and the patent was held to be valid. Such a judgment, pronounced by a judge whose knowledge, experience, and ability invests his opinion with the weight of high authority, must and ought to overbear all doubts upon the subject in this controversy.

That there are differences in the methods employed by the complainant and respondent to incase the soda and seal the packages is doubtless true; but the product of both is substantially the same, viz., caustic soda incased or enveloped in a tight metallic integument, which may be preserved and transported, and thus introduced into general use. The respondent is, therefore, an infringer.

Inasmuch as the patent of the complainant expired October 21, 1870, a decree for an account only can be entered, which is accordingly directed. Let a similar decree be entered in the case of Pennsylvania Salt Manuf'g Co. v. Barry [unreported].

[For other cases involving this patent, see note to Pennsylvania Salt Manuf'g Co. v. Gugenheim, Case No. 10,954.]